NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2683-19

CINDY JOHNSON, Administratrix
Ad Prosequendum and
Administratrix of the estate of
TONY JOHNSON,

     Plaintiff-Respondent,

v.

FRANK MCCLELLAN, ESQ.,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

AARON J. FREIWALD, ESQ., and
FREIWALD LAW, P.C., f/k/a
LAYSER & FREIWALD, P.C.,

     Third Party Defendants.
_____

> **APPROVED FOR PUBLICATION**
>
> **July 19, 2021**
>
> **APPELLATE DIVISION**

Argued October 19, 2020 – Decided July 19, 2021

Before Judges Messano, Hoffman, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2366-19.

John L. Slimm argued the cause for appellant (McElroy Deutsch Mulvaney & Carpenter, LLP, and

Marshall Dennehey Warner Coleman & Goggin, attorneys; John L. Slimm, of counsel and on the briefs; Daniel A. Malet, on the briefs).

William L. Gold argued the cause for respondent (Bendit Weinstock, PA, attorneys; William L. Gold, on the brief).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

Plaintiff Cindy Johnson, in her capacity as administrator of her late husband's estate, brought a civil action against defendant Frank McClellan, under N.J.S.A. 2C:21-22a, for damages resulting from defendant's alleged unauthorized practice of law regarding his involvement in plaintiff's prior medical malpractice suit. Plaintiff also sought disgorgement of a referral fee she claimed defendant received improperly.

Plaintiff moved for summary judgment, which the motion court granted. On February 28, 2020, the motion court entered an Amended Order for Final Judgment, awarding plaintiff a total of $308,181.68, with $52,145.42 representing the "[r]eturn of [i]mproper [r]eferral [f]ee [s]um [o]rdered disgorged," and $256,036.26 representing treble damages and attorney's fees, under N.J.S.A. 2C:21-22a. This appeal followed. Because disgorgement is a remedy, not a cause of action, and because we find no evidence that plaintiff

sustained an "ascertainable loss," a required element for a cause of action under N.J.S.A. 2C:21-22a, we reverse.

## I.

On December 28, 2008, plaintiff's husband went into cardiac arrest and died, while hospitalized in Hamilton. The autopsy report identified a "bilateral pulmonary thromboembolism" as one of the causes of his death. Seeking to bring a medical malpractice suit for her husband's death, plaintiff contacted defendant, on the recommendation of a friend, about possible legal representation. Because defendant, a law school professor and Pennsylvania attorney, was not licensed to practice law in New Jersey, he referred plaintiff to Thomas Ashley, a New Jersey-licensed attorney. Defendant recounted that he "had a discussion with [plaintiff] . . . when [he] referred her to Tom Ashley . . . that Tom would have a fee agreement with her, and it would be a contingent fee . . . ."

According to plaintiff, at "the end of May or beginning of June . . . 2009[,]" she met with Ashley and defendant in Ashley's office; "a couple months later," she received a Legal Services Agreement "from the Law Offices of Tom Ashley," signed by Ashley. After reading the agreement, she "made notes," and then signed the agreement. Plaintiff stated she never had a separate written agreement with defendant; in addition, she confirmed that

A-2683-19

defendant advised her that he would be "monitoring" her case, as a "consultant."

In November 2009, Ashley filed a medical malpractice action for plaintiff in the Law Division in Middlesex County. Defendant agreed to monitor the case and assist Ashley as necessary. Defendant further advised plaintiff,

> I am not admitted to practice in this case so I am just monitoring and advising when requested. I am teaching this fall at the University of Southern Illinois so I cannot monitor as closely as I would like until I return. I will be back at Temple in January.

While the suit remained pending, plaintiff fired Ashley. She then hired Theresa M. Blanco, a Pennsylvania attorney, to take over the case, also at the recommendation of defendant; however, Blanco's firm dissolved shortly thereafter. At that point, plaintiff retained Aaron J. Freiwald, a Pennsylvania attorney with the law firm Layser & Freiwald, P.C., again at the recommendation of defendant. While not licensed to practice law in New Jersey, Freiwald successfully applied for pro hac vice admission for the purpose of representing plaintiff in her pending medical malpractice suit.[1]

---

[1] Freiwald obtained pro hac vice admission through the sponsorship of Joseph Marano, Esq., an associate in his office licensed to practice law in New Jersey. At the time, two other members of Freiwald's firm were also admitted in New Jersey.

In an email sent on March 12, 2010, defendant informed plaintiff that he could not "do much on this case lest [he] be charged with practicing law in New Jersey without a license" because he had "not been admitted pro hac vice in this case." In June 2010, defendant informed plaintiff by email that he was "monitoring and advising" but would "move for . . . admission to formally serve as co-counsel," if he thought it was necessary.

In a January 11, 2011 email to Blanco and Freiwald, defendant explained that since plaintiff "ha[d] been bounce[d] around quite a bit," defendant had "been the one source of continuity, acting as her advisor since [he had] not attempted to be admitted in the case." Defendant further stated that "[i]f it seems helpful or appropriate later[,] I am willing to file a motion for pro hac vice admission." Ultimately, defendant did not seek pro hac vice admission.

In late 2013 or early 2014, Freiwald secured a $500,000 settlement offer, which plaintiff accepted. Thereafter, although he did not have a written retainer agreement with plaintiff, Freiwald distributed to plaintiff net proceeds of $312,872.49, after deducting expenses and a one-third contingent fee of $156,436.25. Freiwald then paid defendant a "referral fee"[2] of $52,145.42,

---

[2] Asked to explained "the fee split," Freiwald explained "it was for referring the case to me, but also recognizing . . . that [defendant] had some involvement in the case and that he would continue to interact with the client as needed."

representing one third of the amount Freiwald received, leaving Freiwald with a net fee of $104,290.83.

Plaintiff testified that she received a document identifying the distributions paid from the fee received by Freiwald, and that defendant "got a portion of the fee, . . . I know that he was on that list." Referring to defendant, plaintiff stated, "I know that he did work on my case. He did . . . work to move it along. . . . I did not dispute the payment to him."

Sometime after settling the medical malpractice case, plaintiff determined that certain culpable parties were not properly joined as defendants in the suit.[3] She therefore filed a separate action, in Essex County, asserting legal malpractice against several of the attorneys involved in representing her in the medical malpractice case. In October 2017, plaintiff joined defendant and Freiwald in the suit.

At his deposition, defendant testified that in the underlying medical malpractice case, he agreed to help plaintiff find counsel and to "assist them to the extent that they requested [his] assistance." Accordingly, he "gave advice to [plaintiff] and to her attorneys." Defendant also described consulting with

---

[3] See Johnson v. Handler, No. A-3862-13 (App. Div. Apr. 15, 2016) (slip op. at 15) (affirming the dismissal of plaintiff's claims against Robert Wood Johnson University Hospital, after finding that an "AOM must be submitted addressing an institution's agents who are not sued but whose alleged negligence forms the basis of the action against the institution.").

and directing plaintiff's attorneys as well as communicating with the experts and doctors involved in the medical malpractice suit; in addition, defendant reviewed plaintiff's complaint in the medical malpractice case and "may have done a draft" of an affidavit for the case. Finally, defendant acknowledged he received the referral fee from Freiwald.

On November 15, 2018, plaintiff moved for partial summary judgment against defendant, requesting the court to order the disgorgement of the allegedly improper referral fee defendant received from Freiwald.[4] In a March 20, 2019 oral decision, the court denied the motion, explaining that disgorgement is a remedy reserved for contract claims, not actions based in negligence.

Two days later, plaintiff filed this action, a two-count complaint against defendant, in Middlesex County. Count one alleged the referral fee paid to defendant was "improper, unlawful, and void under New Jersey law because it resulted from a breach of loyalty by defendant . . . to plaintiff and . . . the funds rightly belong to plaintiff," and sought "judgment against [defendant] for the disgorgement of the referral fee . . . ." Count two alleged that defendant engaged in unauthorized practice of law, as prohibited by N.J.S.A. 2C:21-22a,

---

[4] Since Freiwald was not a certified civil trial attorney, he was not permitted to pay a referral fee "without regard to services performed or responsibility assumed by the referring attorney." R. 1:39-6(d).

and "demand[ed] judgment against . . . [d]efendant for treble damages, which damages include the disengorgment [sic] of the improper referral fee, all costs incurred, attorney[s'] fees, and costs of suit, and such other relief as the [c]ourt deems equitable and just."

On April 26, 2019, in lieu of an answer, defendant filed a motion to dismiss for failure to state a claim, pursuant to Rule 4:6-2(e). In response to defendant's motion, plaintiff moved for summary judgement. Before the court ruled on these motions, plaintiff filed another motion, requesting leave to file an amended complaint, as she and Freiwald had since entered into an agreement whereby Freiwald assigned to plaintiff his interest, and "the right to recover," the referral fee he paid to defendant.[5]

In an order dated June 25, 2019, the court ruled on these motions: 1) granting plaintiff's motion to amend her complaint, 2) denying plaintiff's motion for summary judgement, and 3) denying defendant's motion to dismiss. In an accompanying opinion, the court held that the assignment agreement between Freiwald and plaintiff was not "a prohibited assignment of a pre-judgment tort claim" but rather valid as an "assignment of a right provided by contract . . . and by Court Rule []which provides limitations to

---

[5] At oral argument, we were advised that the Essex County legal malpractice action "resolved."

contingency fee arrangements." However, the court found plaintiff's request for summary judgement deficient because holding defendant liable in tort for a violation of the Rules of Professional Conduct (RPCs) required plaintiff to show that the rule violation proximately caused plaintiff's injury, and "proximate causation is ordinarily left for the determination of a finder of fact."

After plaintiff filed her amended complaint, defendant filed an answer, along with a third-party complaint against Freiwald seeking contribution. In his answer, defendant admitted to the following allegations in plaintiff's complaint:

1. [Defendant] is an attorney at law in the State of Pennsylvania.

2. Defendant was not licensed to practice law in New Jersey during the pendency of the "Medical Malpractice Matter."

3. Defendant was not admitted pro hac vice in New Jersey in the "Medical Malpractice Matter."

4. Defendant rendered advice to the plaintiff in the "Medical Malpractice Matter."

Additionally, defendant stated in his answer that he "admits that he assisted attorneys admitted to the Bar of the State of New Jersey in their representation of [p]laintiff in [the medical malpractice suit]."

9

On July 3, 2019, plaintiff again moved for summary judgment, based partly upon admissions contained in defendant's answer. Defendant filed a cross-motion for sanctions against plaintiff, asserting that plaintiff's motion "is patently frivolous" because the "the same argument . . . was already denied." On August 5, 2019, Freiwald moved to dismiss defendant's third-party complaint for failure to state a claim.

In an order dated January 3, 2020, a different motion judge 1) granted plaintiff's motion for summary judgment, 2) denied defendant's cross-motion, and 3) granted Freiwald's motion to dismiss defendant's third-party claims. In his accompanying written opinion, the motion judge explained that plaintiff was entitled to summary judgment because defendant admitted the necessary material facts to establish a violation of N.J.S.A. 2C:21-22, engaging in the unauthorized practice of law. Specifically, the judge found that defendant admitted in his answer to plaintiff's complaint that he "was not licensed to practice law in New Jersey during the pendency of the medical malpractice matter[,] . . . rendered advice to the [p]laintiff in the medical malpractice matter, and . . . received a fee in the underlying medical malpractice matter." Additionally, the judge cited defendant's 2018 deposition testimony as containing admissions to the unauthorized practice of law:

> [Defendant] stated that he drafted documents for
> plaintiffs signature for filing with the court in related

litigation, communicated with retaining experts, worked with and gave directions to other lawyers who were admitted in New Jersey, and gave opinions as to the law and trial practice of New Jersey to [p]laintiff and other attorneys all of which activities constituted the unauthorized practice of law since he was not licensed in New Jersey.

The judge further noted that the record showed defendant was familiar with the pro hac vice rules, knew he needed to be admitted pro hac vice, and "was actually contemplating pro hac vice admission and becoming trial counsel from the outset of his initial referral," yet failed to abide by these rules.

According to the motion judge, these undisputed facts gave rise to two distinct, "independently actionable bases" in which defendant committed the unauthorized practice of law as prohibited by N.J.S.A. 2C:21-22, and defendant was liable for "either and/or both of those bases." The judge described these bases as:

(1) Freiwald's improper payment of, and [defendant]'s improper acceptance of, the $52,145.41 "referral fee"; and (2) payment and acceptance of that fee, in part, as compensation to [defendant], an unlicensed New Jersey attorney nor one admitted pro hac vice in the underlying action, for services and the "advisory" role he served for [p]laintiff in connection with Freiwald's litigation and ultimate settlement of that action.

Based on these acts, the judge found that defendant "derived a benefit . . . that 'in fact' caused [plaintiff] to suffer a resultant 'ascertainable loss' in the amount of the improperly paid fee." The judge also concluded that while the referral

11

fee was "actionable as the unauthorized practice of law under N.J.S.A. 2C:21-22a," it was also "separately actionable" as an "improperly paid and accepted 'referral fee' . . . ."

Based on these findings and conclusions, the motion judge ordered defendant to disgorge the referral fee he received and separately ordered him to pay treble damages, along with reasonable attorneys' fees and costs, pursuant to N.J.S.A. 2C:21-22a(b)(2). In a February 28, 2020 order, the judge specified that defendant owed $52,145.42 as the "Return of Improper Referral Free Sum Ordered disgorged" and owed an additional $256,036.26 as treble damages under N.J.S.A. 2C:21-22a(b)(2). The judge calculated the treble damages by multiplying the disgorgement amount by three, multiplying plaintiff's attorney's fees ($33,200) by three, and adding those products together. In total, the judge ordered defendant to pay $308,181.68, plus interest and costs.

This appeal followed, with defendant raising the following arguments:

> POINT I
>
> MR. McCLELLAN DID NOT PARTICIPATE IN THE UNAUTHORIZED PRACTICE OF LAW[;]
>
> POINT II
>
> MR. McCLELLAN DID NOT VIOLATE ANY RULES OF PROFESSIONAL CONDUCT[;]

12

POINT III

THE TRIAL COURT IMPROPERLY GRANTED PLAINTIFF'S THIRD-MOTION FOR SUMMARY JUDGMENT AFTER THE NEARLY IDENTICAL MOTION HAD BEEN DENIED TWICE PREVIOUSLY[;]

POINT IV

THE TRIAL COURT IMPROPERLY CALCULATED ITS AWARD OF TREBLE DAMAGES[.]

II.

Review of a ruling on summary judgment is de novo, and we apply the same legal standard as the trial court. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). Likewise, we review "the legal conclusions undergirding the summary judgment motion itself on a plenary de novo basis." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010). We afford no deference to the trial court's construction of "the meaning of a statute or the common law . . . ." Nicholas, 213 N.J. at 478.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). To determine whether there is a genuine issue of material fact, we must consider "whether the competent evidential materials presented, when

viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co of Am., 142 N.J. 520, 540 (1995). "In applying that standard, a court properly grants summary judgment 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Davis v. Brickman Landscaping, 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540).

## A. Disgorgement

As the motion court in Essex County correctly noted in the legal malpractice case, disgorgement is an equitable remedy, not a cause of action. See Kaye v. Rosefielde, 223 N.J. 218, 231 (2015) (noting "[t]he principle that a court may order disgorgement of an employee's compensation for his or her breach of the duty of loyalty."); Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC, 404 S.W.3d 737, 744 (Tex. App. 2013) (explaining that "disgorgement is not a cause of action, but an equitable remedy applied to breaches of fiduciary duty.").

The Third Circuit has explained that "[d]isgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." SEC v. Hughes Cap. Corp., 124 F.3d 449, 455 (3d Cir. 1997) (quoting SEC v. First City Fin. Corp., 890 F.2d 1215,

1230 (D.C. Cir. 1989)). Our Supreme Court has construed disgorgement as an appropriate remedy in cases involving claims of unjust enrichment. See Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 58 (2006) ("Disgorgement in favor of the public entity serves as a harsh remedy against those who bribe a public official to secure a public contract and provides a deterrent to such unlawful activity.").

The Restatement indicates disgorgement is a form of restitution, stating "[r]estitution measured by the defendant's wrongful gain is frequently called 'disgorgement.'" Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. a (Am. L. Inst. 2011). As characterized by the Restatement, it is a remedy imposed against "conscious wrongdo[ers] . . . ." Ibid. Importantly, the Restatement provides "[r]estitution . . . will sometimes yield a recovery where the claimant could not prove damages, but it does not create a cause of action where the claimant would otherwise have none." Restatement (Third) of Restitution and Unjust Enrichment § 44 cmt. a (Am. L. Inst. 2011) (emphasis added).

Federal law, however, recognizes a distinction between restitution and disgorgement. The Third Circuit has explained:

> In contrast [to disgorgement], a claim for restitution seeks to compensate a plaintiff for a loss, so a financial loss is required to bring such a claim. As the Court of Appeals for the Fifth Circuit has explained,

"disgorgement is not precisely restitution. Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs. Disgorgement does not aim to compensate the victims of the wrongful acts, as restitution does."

[Edmonson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 415 n.3 (3d Cir. 2013) (quoting SEC v. Huffman, 996 F.2d 800, 802 (5th Cir. 1993)).]

"Disgorgement is an equitable claim 'grounded in the theory that a wrongdoer should not profit from its wrongdoing regardless of whether the innocent party suffered any damages.'" City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 279 (App. Div. 2018) quoting Cnty. of Essex, 186 N.J. at 61. "It is a harsh remedy and one to be used sparingly." Ibid.

Plaintiff succeeded in convincing the motion court that the assignment she received from Freiwald provided a basis for the court to grant the equitable remedy of disgorgement. We disagree. If Freiwald had asserted a claim against defendant to secure a refund of the referral he paid to defendant on the basis that it was an illegal referral, such a claim would have failed since Freiwald and defendant were in pari delicto.[6] The doctrine of in pari delicto

---

[6] The expression in pari delicto is a portion of the longer Latin sentence, in pari delicto potior est conditio defendentis, which means that where the wrong of both parties is equal, the position of the defendant is the stronger. See Stella v. Dean Witter Reynolds, Inc., 241 N.J. Super. 55, 73-74 (App. Div. 1990).

16

dictates that "neither party to an illegal contract will be aided by the court, whether to enforce it or set it aside." U.S. v. Farrell, 606 F.2d 1341, 1348-49 (D.C. Cir. 1979) (quoting St. Louis R.R. v. Terre Haute R.R., 145 U.S. 393, 407 (1892)). "Simply stated, 'a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit.'" Clark v. Clark, 429 N.J. Super. 61, 77 (App. Div. 2012) (quoting Faustin v. Lewis, 85 N.J. 507, 511 (1981)). See also Ryan v. Motor Credit Co., 132 N.J. Eq. 398, 403 (E. & A. 1942) (holding a borrower who knowingly conspired with a lender to violate the small loan law in pari delicto with the lender and therefore not entitled to be relieved from the consequences of his default on his loan).

The assignment that plaintiff received from Freiwald does not alter the outcome in this case. "It is fundamental that the rights of an assignee can rise no higher than the rights of the assignor." Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 607 (2012) (first citing Mayo v. City Nat'l Bank & Trust Co., 56 N.J. 111, 117 (1970); and then Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co., 320 N.J. Super. 546, 554 (App. Div.1999)). Simply put, the assignment did not permit plaintiff to pursue indirectly a claim that Freiwald could not pursue directly.[7] Plaintiff's

_____

[7] Our Supreme Court has "observed that the RPCs 'establish the state's public policies with respect to attorney conduct'" such that "[c]ontracts that violate

various arguments relating to the viability of the assignment lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

## B.  Unauthorized Practice of Law

N.J.S.A. 2C:21-22 establishes criminal penalties for the unauthorized practice of law.  The statute in full provides:

>    a.  A person is guilty of a crime of the fourth degree if the person knowingly engages in the unauthorized practice of law.
>
>    b.  A person is guilty of a crime of the third degree if the person knowingly engages in the unauthorized practice of law and:
>
>    1) Creates or reinforces, by any means, a false impression that the person is licensed to engage in the practice of law. As used in this paragraph, "by any means" includes but is not limited to using or advertising the title of lawyer or attorney-at-law, or equivalent terms, in the English language or any other language, which mean or imply that the person is licensed as an attorney-at-law in the State of New

___

the [RPCs] violate public policy, and courts must deem them unenforceable." Borteck v. Riker, Danzig, Scherer, Hyland & Perretti, LLP, 179 N.J. 246, 251 (2004) (quoting Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 17 (1992)).  Throughout the current litigation, plaintiff has maintained that defendant's referral of plaintiff's case to Freiwald with the expectation of receiving a referral fee and Freiwald's payment of that referral fee constituted RPC violations.  Since neither Freiwald nor defendant were certified civil trial attorneys, the referral payment did constitute an RPC violation, thereby rendering unenforceable, and thus unassignable, whatever claim Freiwald may have had against defendant.

Jersey or in any other jurisdiction of the United States; or

2) Derives a benefit; or

3) In fact causes injury to another.

c. For the purposes of this section, the phrase "in fact" indicates strict liability.

[N.J.S.A. 2C:21-22.]

N.J.S.A. 2C:21-22a, "Civil actions resulting from the unauthorized practice of law," establishes a private cause of action for persons injured by a wrongdoer's unauthorized practice of law. This statute in full provides:

a. Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of any action or inaction by a person who knowingly engaged in the unauthorized practice of law in violation of [N.J.S.A. 2C-21-22] may bring a civil action in any court of competent jurisdiction.

b. In any civil action under this section the court shall, in addition to any other appropriate legal or equitable relief, award damages in an amount that constitutes the greater of:

1) $1,000, or

2) Three times the value of all costs incurred by the victim as a result of the defendant's criminal activity, including any fees paid to the defendant for services, costs incurred for attorneys' fees, court costs and any out-of-pocket losses.

c. The standard of proof in civil actions brought under this section is a preponderance of the evidence, and the fact that a prosecution for a violation of [N.J.S.A. 2C:21-22] is not instituted or, where instituted, terminates without a conviction shall not preclude a civil action pursuant to this section. A final judgment rendered in favor of the State in any criminal proceeding shall estop the defendant from denying the same conduct in any civil action brought pursuant to this section.

d. A civil action under this section shall not preclude the application of any other civil, administrative, or criminal remedy under any other provision of law.

[N.J.S.A. 2C:21-22a.]

Neither N.J.S.A. 2C:21-22 nor N.J.S.A. 2C:21-22a defines the "unauthorized practice of law." In State v. Rogers, against a void for vagueness challenge, we upheld N.J.S.A. 2C:21-22, but noted that "[w]hat constitutes the practice of law is often required to be decided on a case by case basis because of the broad scope of the fields of law." 308 N.J. Super. 59, 66 (App. Div. 1998). See also In re Op. No. 24 of Comm. on Unauthorized Prac. of Law, 128 N.J. 114, 122 (1992) ("Essentially, the Court decides what constitutes the practice of law on a case-by-case basis."). We explained, "the practice of law is not 'limited to the conduct of cases in court but is engaged in whenever and wherever legal knowledge, training, skill and ability are required.'" Rogers, 308 N.J. Super. at 66 (quoting Stack v. P.G. Garage, Inc.,

7 N.J. 118, 121 (1951)). Canvasing prior caselaw, we noted the following services constituted the practice of law when performed for another: preparing and filing certain tax returns, offering legal advice and active participation in the drafting of a will, drawing legal instruments, completing legal forms, and preparing and filing quasi-judicial appeals. Id. at 67-69.

The practice of law is unauthorized when conducted by persons not licensed to practice in New Jersey or not specially admitted under our court rules. In re Jackman, 165 N.J. 580, 585-86 (2000). Examples of special admissions include:

> [P]ro hac vice admissions granted pursuant to R[ule] 1:21-2 to a member of the bar of another state, foreign legal consultants certified pursuant to R[ule] 1:21-9, third year law students and law school graduates participating in approved programs in within the limits of R[ule] 1:21-3, and certain non-attorneys appearing before the Office of Administrative Law or an administrative agency, R[ule] 1:21-1(f). In situations involving sister state or foreign licensure, authorization to practice is subjected to prior court review and approval. In the other circumstances noted, the legal activity is conducted under the supervision of a member of the bar in good standing pursuant to a program approved by the Court, or the case of the administrative law appearance it is conducted pursuant to rules established by the Office of Administrative Law.
>
> [Ibid.]

The unauthorized practice of law may be committed by both laypersons and out-of-state attorneys. See In re Est. of Margow, 77 N.J. 316, 325 (1978) (finding a former legal secretary engaged in the unauthorized practice of law by providing legal counseling related to a will and drafting the will); Rogers, 308 N.J. Super at 68 (finding a non-attorney mortgage consultant engaged in the unauthorized practice of law by advising a client of the deadline for filing an answer to a foreclosure complaint and drafting and filing the answer for the client); Jackman, 165 N.J. 580 (finding a Massachusetts attorney's transactional legal practice in New Jersey was unauthorized); Est. of Vafiades v. Sheppard Bus Serv., Inc., 192 N.J. Super. 301 (Law. Div. 1983) (finding Florida attorneys who were denied pro hac vice admission in New Jersey engaged in unauthorized practice by negotiating to reach a settlement agreement on behalf of a purported client).

The motion judge determined the pleadings and evidence indisputably showed defendant engaged in the unauthorized practice of law, in violation of N.J.S.A. 2C:21-22, by providing legal services and legal advice in New Jersey while not licensed in the state or admitted pro hac vice. We disagree. In reaching his conclusion, the judge did not address RPC 5.5 of the New Jersey Rules of Professional Conduct. RPC 5.5 explicitly states,

> (b) A lawyer not admitted to the Bar of this State who
> is admitted to practice law before the highest court of

any other state, territory of the United States, Puerto Rico, or the District of Columbia (hereinafter a United States jurisdiction) may engage in the lawful practice of law in New Jersey only if:

. . . .

(3) Under any of the following circumstances:

. . . .

(iv) the out-of-state lawyer's practice in this jurisdiction is occasional and the lawyer associates in the matter with, and designates and discloses to all parties in interest, a lawyer admitted to the Bar of this State who shall be held responsible for the conduct of the out-of-State lawyer in the matter

. . . .

Plaintiff urges this court to ignore the above-quoted version of RPC 5.5 because it did not take effect until September 1, 2010, approximately fifteen months after plaintiff first contacted defendant. Since the underlying medical malpractice action dates back to 2009-2014, the amended version of RPC 5.5 was in effect during the clear majority of the case. In deciding whether or not to apply the amended version of RPC 5.5 retroactively, we begin by noting that we found no clear expression of intent by the Court that RPC 5.5 should only receive prospective application.

23

Under the facts and circumstances presented, we discern no basis for not applying the amended version of RPC 5.5 in assessing plaintiff's claims that defendant engaged in the unauthorized practice of law. Importantly, the record clearly shows that plaintiff was aware, at all relevant times, that defendant was not admitted to practice law in New Jersey. Defendant never acted as counsel of record for plaintiff in the medical malpractice suit. He did not file any papers with the court, nor did he appear on behalf of the plaintiff in court, at any deposition, or any other proceeding. Since the inception of the underlying litigation, plaintiff was represented by members of the New Jersey bar (Ashley and Blanco) or counsel admitted pro hac vice (Freiwald). Defendant's involvement in the underlying lawsuit was limited to providing recommendations to plaintiff to assist her in retaining a properly licensed or admitted attorney to represent her in her case and then assisting her attorneys of record, conduct which is permitted by RPC 5.5(b)(3)(iv).

We also disagree with the motion judge's determination that defendant's receipt of the referral fee amounted to an independent instance of unauthorized practice because such a fee violated RPCs 5.4(a), 7.2(c), and 7.3(d). Significantly, RPC 5.4(a) states that "a lawyer or law firm shall not share legal fees with a nonlawyer," and RPCs 7.2(c) and 7.3(d) generally prohibit lawyers from paying referral fees.

24                                                              A-2683-19

The motion judge held, in essence, that by receiving money from Freiwald, defendant violated RPC 5.4; however, RPC 5.4(a) states, "[a] lawyer or law firm shall not share legal fees with a nonlawyer." Id. The plain language of the rule imposes a prohibition on an attorney attempting to "share legal fees" with non-lawyers, but does not mention recipient of those fees. Thus, the bar contained in RPC 5.4 was a bar on the conduct of Freiwald in the underlying matter, not defendant. Since defendant did not share the fee received from the settlement, but merely received same, he did not violate RPC 5.4.

Regarding the motion judge's finding that defendant violated RPC 7.2(c) and RPC 7.3(d), those rules plainly apply to the attorney who actually transfers the funds, not the recipient. RPC 7.2(c) states, "A lawyer shall not give anything of value to a person for recommending the lawyer's services . . . ." RPC 7.3(d) states, "A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure the lawyer's employment by a client . . . ." The plain language of both RPC 7.2(c) and 7.3(d) imposes the prohibition upon the attorney providing funds to another. The rules do not impose a corresponding prohibition against recipients of such funds. Based upon our review of the record, defendant did not violate any RPC with respect to the settlement funds in the underlying litigation.

Moreover, we are not convinced a violation of the RPCs amounts to the unauthorized practice of law under N.J.S.A. 2C:21-22. Such a finding would render every attorney who violates an RPC relating to the unauthorized practice of law open to criminal prosecution. Illuminated by the caselaw decided under N.J.S.A. 2C:21-22 and its predecessor, N.J.S.A. 2A:170-78, it appears N.J.S.A. 2C:21-22 applies to unauthorized persons practicing law, not legitimate attorneys practicing law in an unauthorized manner. Because the latter involves conduct falling short of the standards of the legal practice, it cannot be considered the unauthorized practice of law.[8] See Infante v. Gottesman, 233 N.J. Super. 310, 315 (App. Div. 1989) (classifying an attorney entering into an improper fee sharing agreement as a violation of the RPCs while describing a non-attorney's practice of law as a criminal offense).

Regardless, a finding that defendant engaged in the unauthorized practice of law in violation of N.J.S.A. 2C:21-22 does not automatically entitle

---

[8] We note that attorneys who violate the RPCs are subject to discipline by our Supreme Court. N.J. Const. art. IV, § 2, ¶ 3; State v. Bander, 56 N.J. 196, 200 (1970). Additionally, a violation of the RPCs may be relevant to establishing unauthorized legal practice under N.J.S.A. 2C:21-22 or a civil claim under N.J.S.A. 2C:21-22a. See Baxt v. Liloia, 155 N.J. 190, 198-200 (1998) (recognizing that while violations of the RPCs do "not per se give rise to a cause of action in tort[,]" they may be relevant in civil actions against attorneys, particularly to defining the standard of care owed in a legal malpractice suit) (quoting Sommers v. McKinney, 287 N.J. Super. 1, 13 (App. Div. 1996)).

A-2683-19

plaintiff to damages under N.J.S.A. 2C:21-22a. Rather, to prevail in a civil action under N.J.S.A. 2C:21-22a, plaintiff must show she suffered an "ascertainable loss of moneys or property, real or personal, as a result of any action or inaction by a person who knowingly engaged in the unauthorized practice of law." N.J.S.A. 2C:21-22a(a) (emphasis added). N.J.S.A. 2C:21-22a further provides damages under this section shall be "[t]hree times the value of all costs incurred by the victim as a result of the defendant's criminal activity, including any fees paid to the defendant for services, costs incurred for attorneys' fees, court costs and any out-of-pocket losses[,]" if greater than $1,000. N.J.S.A. 2C:21-22(b) (emphasis added).

Guided by principles of statutory interpretation, we find the plain language of the N.J.S.A. 2C:21-22a(a) requires that plaintiff prove defendant's unauthorized practice of law proximately caused plaintiff to suffer an ascertainable loss. See Parsons ex rel. Parsons v. Mullica Twp. Bd. of Ed., 226 N.J. 297, 307-08 (2016) (discussing statutory interpretation). While N.J.S.A. 2C:21-22 delineates strict criminal liability for persons who knowingly engage in the unauthorized practice of law under certain circumstances, N.J.S.A. 2C:21-22a clearly requires the additional proofs of causation and ascertainable loss for the imposition of civil liability.

27

The language of N.J.S.A. 2C:21-22a is somewhat analogous to that of N.J.S.A. 56:8-19, which provides for a private cause of action under the Consumer Fraud Act (CFA). See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 554 (2009). N.J.S.A. 56:8-19 provides:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under [the CFA] may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest.

Our courts have extensively interpreted N.J.S.A. 56:8-19 and found its language creates a "causation provision," Cox v. Sears Roebuck & Co., 138 N.J. 2, 23 (1994), which requires "a causal relationship be established between any ascertainable loss and the unlawful practice condemned." Ramanadham v. N.J. Mfrs. Ins. Co., 188 N.J. Super. 30, 33 (App. Div. 1982). Based on this language, in order to bring a prima facie case for damages under the CFA, a plaintiff must establish three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland, 197 N.J. at 557. Our courts "have generally found causation to be established for CFA purposes when a plaintiff has demonstrated a direct correlation between the unlawful

practice and the loss; they have rejected proofs of causation that were speculative or attenuated." Heyert v. Taddese, 431 N.J. Super. 388, 421 (App. Div. 2013).

The Court has also defined "ascertainable loss" in the context of the CFA. See Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005). "An ascertainable loss under the CFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" D'Agostino v. Maldonado, 216 N.J. 168, 185 (2013) (quoting Thiedemann, 183 N.J. at 248). "The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss," Bosland, 197 N.J. at 559, as "[a]n 'estimate of damages, calculated within a reasonable degree of certainty' will suffice to demonstrate an ascertainable loss." Thiedmann, 183 N.J. at 249 (quoting Cox, 138 N.J. at 22). A plaintiff can meet this requirement by showing an "out-of-pocket loss or the loss of the value of his or her interest in property[,]" or by demonstrating "that he or she has been deprived of the 'benefit of the bargain' because of a CFA violation." D'Agostino, 216 N.J. at 190-92. Ultimately, "[t]he determination of whether a plaintiff has suffered an ascertainable loss 'focus[es] on the plaintiff's economic position resulting from the defendant's consumer fraud.'" Id. at 194.

Because its language and structure are comparable to the CFA's private cause of action provision, we find N.J.S.A. 2C:21-22a similarly contains causation and ascertainable loss elements. While we acknowledge N.J.S.A. 2C:21-22a(a) provides plaintiff need only prove an ascertainable loss caused by "any action or inaction by a person who knowingly engaged in the unauthorized practice of law in violation of [N.J.S.A. 2C:21-22]," we find N.J.S.A. 2C:21-22a(b)(2), which states damages shall be based on "the value of all costs incurred by the victim as a result of the defendant's criminal activity," mandates plaintiff show defendant's actual unauthorized practice caused the claimed loss. Thus, to prevail on her claim for damages under N.J.S.A. 2C:21-22a, plaintiff must prove the following elements by a preponderance of the evidence: 1) defendant engaged in the unauthorized practice of law, as prohibited by N.J.S.A. 2C:21-22; 2) plaintiff suffered an ascertainable loss; and 3) a causal relationship between defendant's unauthorized practice of law and the ascertainable loss.

Based on our review of the record, we conclude that plaintiff did not and cannot establish any of the elements necessary to prevail under N.J.S.A. 2C:21-22a. Therefore, the motion judge erred by finding plaintiff entitled to judgment as a matter of law. The evidence does not show that defendant engaged in the unauthorized practice of law, nor does it show that plaintiff

sustained an ascertainable loss, nor does it establish a causal nexus between defendant's alleged unauthorized practice of law and plaintiff's claimed loss.

The motion judge concluded plaintiff suffered an ascertainable loss stemming from plaintiff's and Freiwald's contingent fee agreement in the medical malpractice settlement. Freiwald apparently failed to reduce this agreement to writing, in violation of Rule 1:21-7(g) and RPC 1.5, rendering it unenforceable. See Starkey v. Est. of Nicolaysen, 172 N.J. 60, 67 (2002).

In May 2019, plaintiff and Freiwald executed an "assignment agreement" whereby they agreed Freiwald was "entitled to fees based on quantum meruit, because there was no written contingency fee agreement." Noting quantum meruit is measured by the reasonable value of Freiwald's services, the judge posited that the reasonable value of Freiwald's services was equal to "Freiwald's expectation interest," i.e. $104,290.83, the net compensation Freiwald received after paying defendant the referral fee of $52,145.41. Since Freiwald was only entitled to $104,290.83, approximately twenty-one percent of the total settlement amount, the judge concluded that plaintiff was entitled to approximately seventy-nine percent of the settlement. Yet, plaintiff only received approximately sixty-seven percent of the settlement because she paid Freiwald thirty-three percent, Freiwald having

31

paid eleven percent as a referral fee to defendant. Thus, the judge identified the $52,145.41 Freiwald paid to defendant as plaintiff's ascertainable loss.

In our view, the $52,145.41 loss identified by the motion judge is entirely hypothetical. While plaintiff and Freiwald may have agreed after the fact as to the amount of quantum meruit compensation Freiwald should receive, Freiwald's expectation interest is not the proper means of calculating the reasonable value of his services. Rather, the reasonable value of services rendered is determined through the consideration of numerous factors, including, but not limited to: the length of time spent on the case, the quality of representation, the viability of the client's claim, the amount of damages ordered, and the relationship between client and attorney. See Bruno v. Gale, Wentworth & Dillon Realty, 371 N.J. Super. 69, 74-76 (App. Div. 2004) (quoting La Mantia v. Durst, 234 N.J. Super. 534, 540-41 (App. Div. 1989)). The motion judge improperly calculated this amount on summary judgment without considering the appropriate factors.

In fact, defendant did not actually cause plaintiff any ascertainable loss, as required by the statute. Defendant did not participate in the settlement or negotiate the fee Freiwald obtained from the settlement. Therefore, no "action or inaction" taken by defendant actually caused plaintiff any ascertainable loss, as required by the statute. The sole actor was Freiwald and any claim plaintiff

32

has with respect to the settlement funds must be directed at him. Freiwald took a one-third contingency of the net settlement recovery. Plaintiff did not contest that division of funds until after the Essex County litigation was filed.[9] What Freiwald did with those funds thereafter had no effect on the funds plaintiff received. Since Freiwald assumed, incorrectly, that he had a signed contingent fee agreement, plaintiff would have received two-thirds of the net recovery, whether or not Freiwald planned on paying a referral fee to defendant. Accordingly, defendant did not violate N.J.S.A. 2c:21-22(a) because he did not cause plaintiff any "ascertainable loss."

More importantly, even if the amount defendant received from Freiwald can be considered a measure of plaintiff's ascertainable loss, the evidence does not show defendant's alleged unauthorized practice of law caused this loss. Plaintiff did not pay defendant any of the settlement award; she paid Freiwald the entire one-third contingent fee. Assuming the quantum meruit value of Freiwald's services is less than the amount plaintiff paid him, Freiwald is the one who would owe plaintiff the difference. This would be true regardless of whether or not Freiwald paid defendant a referral fee.

---

[9] Based upon the contingent fee agreement plaintiff signed with Ashley, plaintiff's expectation was that she would pay a one-third fee on the net recovery, which is what Freiwald charged her initially. Defendant's involvement in the case did not cause plaintiff to incur an ascertainable loss, i.e. a fee greater than one-third of the net recovery.

Apparently recognizing this fact, plaintiff negotiated for an assignment of Freiwald's "right to recover" the referral fee Freiwald improperly paid to defendant. However, even if we assume the validity of the assignment, it does not establish a causal connection between defendant's alleged unauthorized practice in the medical malpractice matter and Freiwald obtaining from defendant a fee greater than he should have received. In addition, as we previously noted, Freiwald lacked the ability to assign a viable claim to plaintiff because of the RPC violation he committed when he paid defendant the referral fee. See Infante, 233 N.J. Super. at 315-18 (declining to allow quantum meruit recovery for services rendered under a fee sharing agreement between an attorney and a non-attorney – unenforceable for violating public policy and the RPCs – even though the decision would result in the attorney's unjust enrichment).

The motion judge found that defendant caused plaintiff's claimed loss because plaintiff could have negotiated a more favorable contingent fee arrangement with Freiwald, if Freiwald did not have to consider paying some of his contingent fee award to defendant. However, the motion judge found Freiwald's contingency agreement was invalid, and plaintiff used this fact to persuade Freiwald to agree that the quantum merit value of his services was one-third less than what he deducted from plaintiff's net settlement proceeds.

A-2683-19

Thus, we fail to see how Freiwald's decision to pay a referral fee to defendant can be viewed as causing a claimed loss. Moreover, this "loss" disappeared once Freiwald agreed that the quantum value of his services was two-thirds of what plaintiff paid him, thereby obligating him to return to plaintiff the excess fee he charged her. Plaintiff's decision to accept an assignment from Freiwald of a claim we find to be unenforceable does not serve to reestablish this purported "ascertainable loss."

The record contains no evidence that defendant's alleged unauthorized practice of law in the medical malpractice suit caused the settlement amount secured by Freiwald to be lower than warranted or to have caused plaintiff any out-of-pocket loss. Plaintiff has therefore failed to demonstrate a direct correlation between defendant's alleged unauthorized practice of law in New Jersey and any loss plaintiff sustained. Since Freiwald, not defendant, was the direct cause of plaintiff's claimed loss, plaintiff failed to establish the causation element necessary to recover under N.J.S.A. 2C:21-22a.

Plaintiff further argues that we should refuse to consider most of defendant's arguments, based upon defendant's appellate brief identifying a "completely different . . . set of issues" than the issues set forth in defendant's "brief in opposition to summary judgment." In support of this argument plaintiff cites US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 483 (2012),

which quotes the seminal case of <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973), for the proposition that the appellate courts will not consider issues not raised before the trial court.

We reject plaintiff's argument as the record shows that all issues raised on appeal were before the motion judge. In <u>Nieder</u>, the plaintiff sought to introduce affidavits and factual evidence to the Supreme Court that was not presented to, nor discussed by, the trial court or this court. <u>Id.</u> at 234-235. That did not occur here. Defendant has not attempted to introduce new evidence on appeal. Moreover, the judgment under review resulted from plaintiff's motion; hence, plaintiff bore the burden of proof under summary judgment standards. Plaintiff's claim that defendant waived certain arguments because he did not make precisely the same arguments in the trial court clearly lacks merit. "[E]ven in an uncontested motion, the judge must consider whether undisputed facts are sufficient to entitle a party to relief. It is not enough to suggest that there is no opposition, especially if the facts do not warrant the granting of relief in the first instance." <u>Allstate Ins. Co. v. Fisher</u>, 408 N.J. Super. 289, 302 (App. Div. 2009).

Because plaintiff failed to establish a claim for disgorgement or a claim for damages under N.J.S.A. 2C:21-22a, we vacate the motion judge's

disgorgement damage award and the award of treble damages, as contained in the Amended Order for Final Judgment.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2683-19