**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2449-23

UNIVERSAL DEVELOPMENT
AND CONSTRUCTION II, LLC,

    Plaintiff-Appellant,

v.

EUROPEAN CAR CARE,
LLC and FELIX HENRIQUEZ,

    Defendants-Respondents.

_____

Submitted May 19, 2025 – Decided June 4, 2025

Before Judges Sabatino and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. LT-008994-23.

Law Offices Steven J. Sico, LLC, attorneys for appellant (Steven J. Sico, on the brief).

Wiley Lavender, PC, attorneys for respondents (Pankaj Maknoor, on the brief).

PER CURIAM

In this appeal from the Special Civil Part, a commercial landlord seeks reversal of the trial court's finding that the tenant provided the landlord with adequate notice of its intent to renew the lease. Affording due deference to the court's credibility findings and discerning no misapplication of law, we affirm.

The relevant facts that emerged at the one-day trial can be succinctly described. Plaintiff Universal Development and Construction II, LLC, is a landlord that owned a commercial building in Perth Amboy. In October 2020, plaintiff agreed to rent the premises to defendants European Car Care, LLC and its principal Felix Henriquez. Defendants operated a car repair shop on the premises.

The parties executed a written lease, which was drafted by plaintiff's attorney. The agreed-upon term of the lease was three years, commencing on November 15, 2020, and ending on November 14, 2023. The lease contained an option for defendants to renew the lease for an additional three years, which defendants could exercise by providing the landlord with six-months advance notice pursuant to the following provision in Article 1.02(b):

> b. Lessee may exercise each option to extend this lease by giving to Lessor notice of its intention to do so not later than six (6) months prior to the expiration of the lease term, in the case of the initial option to extend, or the expiration of the extended lease term, in the case of successive options to extend. To constitute effective

> notice of an intention to exercise an option under this lease, the notice must be sent by certified or registered mail to Lessor at the address provided in Paragraph 15.01 of this lease and must be postmarked no later than the date provided in this section for Lessee's exercise of the option.
>
> [(Emphasis added).]

The provision in Article 15.01 cross-referenced above, however, concerns situations of early termination of the lease and does not specify an address for serving notices. At trial, the parties stipulated through their counsel that the controlling provision for serving notices instead was Article 16.01 "Miscellaneous." Article 16.01 prescribes that "[a]ll notices required under this lease must be given by certified mail or registered mail, addressed to the proper party, at the following addresses: . . . ." The provision then has blanks for filling in the respective names and addresses of the "Lessor" and the "Lessee." Below those blanks, Article 16.01 then instructs that "[e]ither party may change the address to which notices are to be sent by giving the other party notice of the new address in the manner provided in this section."

The central problem here is that, as executed, the addresses that were handwritten into the blanks in Article 16.01 for the "Lessor" and "Lessee" are identical. In the space for the Lessee, the name of defendant Felix Henriquez is written, with a street address in South Amboy. However, the space for "Lessor"

3

is handwritten with the name of defendant's managing member, Videidy Bonafacio Quiroz, using the very same South Amboy address as the "Lessee." Neither the landlord's name nor address is listed within this Article of the lease. Hence, as executed, Article 16.01 specifies both a mistaken name and address for serving notices on the landlord, solely including defendants' names and shared address.

If read literally, Article 16.01 nonsensically would mean that the tenant is supposed to serve a notice of intent to renew the lease on itself at its own address and serve nothing on the landlord. It is undisputed the parties never amended Article 16.01 to change the addresses through the process set forth in that provision and rectify this mistake. The lease sets forth the landlord's correct business address in another provision not pertinent to renewal, Article 2.01, but the discrepancy with Article 16.01 was never rectified nor explained.

According to the testimony of Henriquez and Quiroz at trial, defendants chose to renew the lease in January 2023, about ten months before the lease term expired and in accordance with the six-month minimum notice prescribed in Article 1.02(B). David Patel, a professional acquaintance of Henriquez, testified that Henriquez had reached out to him for guidance on how to go about renewing the lease. In response, Patel sent a text message to Henriquez containing a draft

4

of a message that Henriquez could use when contacting his landlord to renew his lease. Quiroz testified that she then handwrote a copy of the contents of the text message that Patel had sent to Henriquez. She gave that handwritten note to the landlord's representative during an in-person meeting on January 15, 2023, when he came to collect the monthly rent check. Henriquez testified he was present at the time Quiroz gave the note to the landlord's representative.

Thereafter, according to their testimony, defendants cleared out and restored an adjacent lot in anticipation of leasing that parcel to create more room for their customers' cars.

Plaintiff denied ever receiving the handwritten renewal notice from Quiroz and denied having conversations with defendants regarding any renewal. On October 16, 2023, plaintiff's agent sent a written notice to defendants, advising them that the lease was soon ending and directing them to vacate the property by 5:00 p.m. on November 14, 2023. The notice further announced that "[f]ailure to do so will result in immediate eviction as a holdover tenant" and "any rents accumulated after November 14, 2023 will be at [a double] rate of $8,000.00 a month."

On November 9, 2023, defendants' attorney responded to plaintiff's notice, asserting that the renewal option "was properly exercised because your client

5

failed to supply an address for notice." As reflected in the appendix, defendants' attorney enclosed a copy of a previous reply letter dated October 16, 2023, sent via certified mail to plaintiff, stating that defendants intended "to confirm that the option [for renewal] in [the] lease has been exercised" and that defendant "was able to hand deliver the notice [of renewal] by hand within the [required] time frame." The attorney also provided the rent check for the first month of the option term.

Maintaining that the renewal option had not been properly exercised with a notice sent by certified mail, plaintiff filed a summary dispossession action against defendants in the Special Civil Part. Among other things, plaintiff sought $8,000 per month in holdover rent (double the $4,000 normal monthly rent) from defendants due to their alleged holdover occupancy of the premises. Defendants, meanwhile, filed a declaratory judgment action against the landlord, seeking to validate the exercise of the renewal option. The trial court reportedly dismissed the declaratory action and advised the parties that the issues raised in the declaratory action could be resolved within the landlord-tenant dispute.[1] Nothing in the record indicates plaintiff objected to that procedure.

---

[1] Defendants in their brief offer to supply us with a copy of the declaratory judgment complaint and the court's dismissal order, but we find that unnecessary

A-2449-23

At trial, the court considered testimony from four witnesses: plaintiff's principal, Patel, Henriquez, and Quiroz. The court also considered the lease and other exhibits.

On March 12, 2024, the court issued a detailed order, ruling in favor of defendants, finding they had supplied valid timely notice of their renewal of the lease. The court found credible the testimony of Henriquez and Quiroz that a course of dealing had been established in which defendants would provide the landlord with rent checks and other communications in person rather than by mail. The court further reasoned that, in light of the address mistake in Article 16.01 of the lease, defendants could be excused for not sending a renewal notice by certified mail:

> This Court did not find [the] Landlord's testimony to be credible. . . . This Court finds that it is reasonable for the Tenant to believe that the lease contained an inadvertent mistake. Indeed, the Landlord blamed the address mistake on the drafting attorney, further convincing this Court that strict compliance with the Lease Agreement was impossible.

The court found, "based on the credibility of the witness[es'] testimony and on the weight of the evidence presented, that it is more likely that [the Tenant's]

---

because plaintiff has not contested the representations concerning them. Plaintiff has not appealed or cross-appealed the dismissal of the declaratory action.

agent did hand [the] Landlord a physical copy of a notice to extend Tenant's lease."

The court further reasoned it would be unfair under the circumstances to insist on defendants' strict compliance with the certified mailing provision. The court noted the law implies a covenant of good faith and fair dealing in contractual relations, and that it "should not impose unintended consequences upon parties no[r] destroy the mutual benefits created by the Lease Agreement." See Sons of Thunder, Inc. v. Borden, 148 N.J. 396, 420 (1997). Applying these principles, the court concluded "the Landlord violated the implied covenant [by] knowingly depriving the Tenant of their right to exercise their extension of the Lease Agreement."

Plaintiff appeals, arguing the trial court erred in: (1) not enforcing strict compliance with the lease terms; (2) finding it more likely than not that defendants had exercised their renewal option; (3) referring to an unrelated lot that was not part of the landlord's complaint; and (4) finding the landlord had breached the lease by refusing to extend it.

None of these arguments for reversal have merit. In fact-dependent cases such as this one, particularly those tried without a jury in the Special Civil Part, the trial court's credibility findings deserve great deference. An appellate court

"review[s] the trial court's factual findings under a deferential standard: those findings must be upheld if they are based on credible evidence in the record." Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017). "That deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "An abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Kornbleuth v. Westover, 241 N.J. 289, 302 (2020) (internal quotation marks omitted). Here, there is ample credible testimonial evidence from defendants to support the trial court's determination.

Moreover, our de novo review of the legal issues, see D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013), reveals no errors of law within the court's ruling. Our case law has long held that "[t]he requirement in the primary lease for written notice of intention to renew could be waived and such a waiver could be effected either by parol agreement or by the actions of the parties." Dries v. Trenton Oil Co., 17 N.J. Super. 591, 596 (App. Div. 1952). In this case, the "actions of the parties," as factually determined by the court, justified a waiver of the strict compliance with the lease's certified mailing requirement.

In addition, we endorse the court's principled application of the implied covenant of good faith and fair dealing.  Given the credible narrative of defendants and the mistake within Article 16.01, we agree with the court that it would be unjust to dispossess them in this setting.  We also see no need to rest our affirmance on the trial court's discussion of the nearby lot; the proofs are more than ample without that evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2449-23